IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| KENNETH D. LIGGINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:18-cv-38 |
| | ) | |
| G.A. & F.C. WAGMAN, INC., *et al.*, | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This matter is currently before the court on defendants' motion to dismiss plaintiff's first amended complaint[1] under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 43.) The matter has been fully briefed and argued before the court. The court finds that plaintiff Kenneth Liggins, who is proceeding *pro se*, has failed to state a claim upon which relief can be granted and accordingly will grant defendants' motion to dismiss. The court, however, will also grant Liggins's motion to amend his amended complaint, in part. (Dkt. No. 51.)

I. BACKGROUND

Liggins brought this suit to recover money he alleges he is due for various claims arising out of his employment with Wagman Heavy Civil.[2] He worked for Wagman from September 15, 2015, to October 2, 2017, as a "labor," "finisher," and "labor foreman." Liggins alleges claims of racial discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964 and claims of conspiracy and fraud against Wagman. He seeks compensatory and punitive damages. (Compl., Dkt. No. 7.) In his brief in opposition to the

---

[1] Plaintiff filed his first amended complaint before he needed to seek leave to amend.

[2] The complaint names both G.A. & F.C. Wagman, Inc. and Wagman Heavy Civil, Inc. as defendants, but defendants clarify in their motion to dismiss that G.A. & F.C. Wagman is the former name of Wagman Heavy Civil and not a separate legal entity. (Dkt. No. 1.)

motion to dismiss and at the hearing, Liggins relied on allegations not made in his complaint. When that was called to his attention, he moved to amend his complaint.

## II. DISCUSSION

### A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, and establishes "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Unadorned allegations of wrongdoing, "formulaic recitation[s]" of the elements of a claim, and "'naked assertions' devoid of 'further factual enhancement'" are insufficient to state viable claims. *Id.* (quoting *Twombly*, 550 U.S. at 555–57).

### B. Liggins's Claims

#### 1. Discrimination

In his first claim, which is labeled discrimination, Liggins alleges that defendants Rich Turner and Corey Gaye,[3] employees at Wagman, retaliated against him when he told them that three of his coworkers were using drugs on the job-site. Liggins contends that after he informed Turner and Gaye of this, one of his coworkers put cocaine in Liggins's water and told Turner, resulting in Turner and Gaye demanding Liggins take a drug test. He then states that he was sent to Valley Health Urgent Care with one Caucasian coworker and one Hispanic coworker to take drug tests. (Compl. 2–4.) The nurse at Valley Health told Liggins that his sample needed to be

---

[3] Rich Turner is a "project manager," and Corey Gaye is the "safety manager for job number 4002." (Compl. 7.)

sent out for further evaluation, but Liggins believes that this never occurred. Liggins also took issue with the need to further evaluate his sample because the same evaluation was not requested for the samples from his coworkers. When his sample came back positive for cocaine, Liggins said that he had not used drugs and was told to take another test, which came back negative. (Specimen Result Certificate, Dkt. No. 7-2; Compl. 4.) Liggins was thereafter terminated by Turner and Gaye. He argues that his termination was retaliation by Turner and Gaye because it was easier for them to terminate one rather than three employees and reveal "the high level of drug use on the job," and because he informed them that his coworkers were using drugs at work. Liggins contends that this retaliation was due to his race, black. (Compl. 4–5, 10.)

This claim fails for two reasons. First, Title VII claims may only be brought against employers, not individuals. 42 U.S.C. § 2000e-2(a)(1). Accordingly, Liggins cannot assert a Title VII discrimination claim against Turner and Gaye in their supervisory roles. *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998) ("[S]upervisors are not liable in their individual capacities for Title VII violations.").

Second, Liggins has not sufficiently alleged that defendants' unlawful discrimination was due to his race. He has not pled facts that show direct evidence of racial discrimination by Turner or Gaye; rather, he recounts the circumstances that led to his termination—his reporting of coworkers, taking a drug test with coworkers, and initial positive result from his first drug test—and simply states that his termination was because of his race. *See Warch v. Ohio Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) ("Direct evidence must be 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'")). Liggins also has not alleged a prima facie case of racial discrimination, which is

the applicable standard in the absence of direct evidence of discrimination, and requires that he establish: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Scott v. Health Net Fed. Servs.*, 463 F. App'x 206, 208 (4th Cir. 2012). He has not shown satisfactory job performance because his drug test result was positive for cocaine. (Specimen Result Certificate, Dkt. No. 7-2.) He also has not shown different treatment from similarly situated employees outside the protected class; notably, he has not alleged that his coworkers who took drug tests on the same day also received positive results or that only his test was sent for further evaluation because of his race. Thus, Liggins's Title VII discrimination claim fails.[4]

## 2. Conspiracy

In his conspiracy claim, Liggins posits that defendants[5] conspired to "file a false and misleading report" on his first drug test and that his sample was never sent to a lab. (Compl. 5.) He further alleges that Gaye requested Wagman and Valley Health to conspire to produce a false positive drug test "to carry out Wagman [sic] malicious intent to retaliate against Liggins and terminate his employment." (Compl. 11.)

The conspiracy claim also fails because it is speculative and lacks particularity. A "conspiracy should be alleged with such particularity as to show an unlawful agreement between the parties charged," but Liggins has not alleged so here. *Morse v. Lewis*, 54 F.2d 1027, 1030 (4th Cir. 1932). Therefore, this claim will be dismissed.

---

[4] To the extent these allegations are construed as an unlawful retaliation claim, see the analysis under claim four.

[5] In his amended complaint, Liggins also asserted this cause of action against Valley Health Urgent Care and Alecia Morris, but they have been dismissed as defendants.

### 3. Hostile Work Environment

Liggins also asserts that he was subjected to a hostile work environment. In this claim, he makes several allegations against Stan Darby, a Wagman employee who Liggins supervised when he was a labor foreman. (Compl. 6–7.) First, Liggins states that Darby told other Wagman employees "that he was not going to work for a nigger," referring to Liggins. He also asserts that Darby told him that he (Darby) was supposed to get the job that was offered to and accepted by Liggins. Liggins further alleges that Darby pushed him while they were in an exercise class at work and thereafter "walk[ed] off the job after being told by Liggins to go to work." When Darby and Liggins met with Turner to discuss this incident, Darby said that he had pushed Liggins and walked off the job, to which Turner replied that they should try to get along and their behavior would not be tolerated. Liggins claims that "[n]o other corrective action was taken by Wagman management," and Turner did not report this incident to safety personnel and/or "Safety did not want to write up any race incident." Liggins also alleges that after he called a meeting with his coworkers to announce "that he was the only one to give job assignment[s] and not Stan Darby," Darby threw his hard hat at Liggins, hitting him in the chest, and walked off the bridge. When Liggins notified Turner about this incident, Turner reassigned Darby to another crew. (Compl. 6–7.)

Based on these facts, Liggins contends that Darby's conduct, which was allegedly supported by Turner and Gaye when they "refuse[d] to correct it and allow[ed] it to continue," created a hostile work environment. He also posits that this led his coworkers to defy his authority because Wagman management "refuse[d] to terminate Stan Darby and or give classes on race retaliation in the work place." (Compl. 8–9.) Liggins concludes that Wagman is liable under Title VII because of the actions of its employees.

5

A hostile work environment "is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To establish a racially hostile work environment, the plaintiff must show "(1) unwelcome conduct; (2) that is based on the plaintiff's [race]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir. 2010) (quoting *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 192 (4th Cir. 2000)).

While Liggins has alleged that Darby used a racial slur when talking to employees about him, and clearly, that word "is pure anathema to African-Americans," his claim of hostile work environment still fails. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001). Because Darby was Liggins's subordinate rather than supervisor, this incident does not carry the same weight in creating a hostile work environment as if it had been said by a supervisor. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 278 (4th Cir. 2015) ("In measuring the severity of harassing conduct, the status of the harasser may be a significant factor."). Further, this single incident of a racial slur made by a coworker rather than a supervisor cannot alone sustain his hostile environment claim. *Id.* In addition, Liggins has not alleged in his complaint that he reported the racial epithet Darby used against him to a supervisor. Liggins also has not alleged that Darby's unwelcome conduct of pushing him or throwing a hard hat at him was due to his race. Thus, these allegations do not satisfy plaintiff's burden to state a claim for a hostile work environment.

### 4. Title VII Retaliation

In his Title VII retaliation claim, Liggins repeats the factual allegations from his first claim and adds that one of the coworkers who he reported told Turner that he had been using drugs. He also adds that Turner told him he could not fire one of the coworkers Liggins reported to be using drugs because that employee owed Turner money and that the two coworkers who took drug tests with him at Valley Health were not the employees he had reported. (Compl. 9–10.) Liggins further alleges that he was retaliated against because he spoke out when his coworker was hurt on the job, and no safety report was written up. (Compl. 9.) He contends that he was treated differently because he "refuse[d] to continue to be discriminated against in a hostile work environment." (Compl. 12.)

"In order to establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) that [he] engaged in a protected activity; (2) that [his] employer took an adverse employment action against [him]; and (3) that there was a causal link between the two events." *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406–07 (4th Cir. 2005). A protected activity under Title VII is specifically defined: an employer cannot retaliate against an employee for opposing "any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). This means that an employer cannot "take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). Here, Liggins has not alleged that he was terminated because he opposed *discriminatory* practices; instead, Liggins has alleged that his opposition to Wagman's safety procedures and inadequate response to drugs in the workplace led to his termination. This is not a protected

7

activity under Title VII, so his allegations regarding unlawful retaliation fail to state a claim.

### 5. Retaliation by Accounting Fraud

Last, Liggins briefly notes that the payroll department overpaid him $1,000, and this was done "with willful and malicious intent . . . at the request of Corey Gay[e] and Rich Turner in which they continued their discrimination and retaliation against Liggins." In support of his argument, Liggins only states that he did not give Wagman permission to access his bank account and was not informed that he had been overpaid. (Compl. 14.)

This claim is purely speculative and insufficient to state a claim. Liggins does not set forth any facts from which the court could draw a reasonable inference that Wagman is liable for accounting fraud. Thus, this claim also fails.

## C. Liggins's Motion to Amend the Complaint

Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint "shall be freely given when justice so requires." The court should only deny leave to amend a pleading "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

Granting leave to amend is appropriate here, particularly because plaintiff is proceeding *pro se*. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the court directs Liggins that he does not have leave to amend to add individuals under his Title VII claim or add a pay discrimination claim.[6]

---

[6] Liggins has filed a separate complaint against Wagman alleging pay discrimination. *Liggins v. G.A. & F.C. Wagman, Inc., et al.*, No. 5:18-cv-00072 (W.D. Va.).

## III. CONCLUSION

For the foregoing reasons, the court will grant defendants' motion to dismiss and will grant Liggins's motion to amend the amended complaint in part.

An appropriate order will follow.

Entered: November 1, 2018

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge